HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL J. MILLER, et al.,

    Plaintiffs,

v.

HAROLD S. MCCLOUD, et al.,

    Defendants.

CASE NO. C13-911RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion to dismiss for lack of personal jurisdiction. No one requested oral argument, and the court finds oral argument unnecessary. For the reasons stated below, the court directs the clerk to TERMINATE the motion. Dkt. # 10. The court rules that, on this record, it lacks personal jurisdiction over Defendants. The court exercises its discretion, however, to permit limited discovery to supplement the record as to personal jurisdiction. This order ends with instructions as to that discovery and as to a final determination of personal jurisdiction.

## II.  BACKGROUND

In 2006, Plaintiff Chesterfield Mortgage Investors, Inc. ("CMI"), a Seattle-based company, hired a Colorado appraisal company to appraise a commercial property in Denver. The appraisal company's two principals were Harold McCloud and Thomas

ORDER – 1

Power.  It is not clear how CMI chose the appraisers, but there is no allegation that the appraisers solicited CMI, much less that they solicited CMI in Washington.

According to Mr. McCloud, CMI's Vice President, Marty Hunter, telephoned him and they reached a preliminary agreement to appraise the Denver property.  McCloud Decl. ¶ 15.  Mr. McCloud was aware that CMI had an office in Seattle, but he did not know where CMI did business.  *Id.* ¶ 14.  Mr. Hunter sent Mr. McCloud a document, on letterhead bearing CMI's Seattle address, that stated in relevant part as follows:

> The undersigned has been engaged to provide an appraisal on the above referenced property.  It is understood that in its normal course of business [CMI] sells loan participations to investors, which may be secured by the above property.
>
> Therefore, [the appraisers] hereby consent[] to the use of the above appraisal by CMI in conjunction with a securities offering.

*Id.*, Ex. 1.  Mr. McCloud called Mr. Hunter and explained that his company would appraise the property only if it could review and approve any use of the appraisal report in promotional material that CMI used in connection with a securities offering.  *Id.* ¶ 16.  Mr. Hunter agreed.  Mr. McCloud and Mr. Power signed the document.  The document does not disclose to whom CMI would promote its offering or under what jurisdiction's laws it would make the offering.  *Id.*, Ex. 1.  Mr. McCloud declares that CMI disclosed none of those facts to him.  *Id.* ¶¶ 14, 16.

Not long thereafter, Mr. Hunter sent a letter confirming CMI's engagement of the appraisers.  This letter was silent as to the purposes for which CMI would use the appraisal.  McCloud Decl., Ex. 2.

Mr. McCloud and Mr. Power signed an appraisal that valued the Denver property on an "as-is" basis, at $5.35 million, and assessed the value of its fixtures and equipment at $1.87 million.  Their appraisal included a paragraph governing "[p]ublication and use of this Appraisal Report."  McCloud Decl., Ex. 3 (Appraisal at 8).  It prohibited use of the report for advertising or promotion without the appraisers' consent, and it required CMI

ORDER – 2

to permit the appraisers to review any mention of the report in a document filed with a government agency without first permitting the appraisers to review the document. *Id.*

CMI never provided the appraisers with a document to review. McCloud Decl. ¶ 21. CMI paid the appraisers shortly after it received the report. *Id.* ¶ 19. Mr. McCloud declares that his two telephone conversations with Mr. Hunter, the two documents that Mr. Hunter sent, the appraisal report itself, and CMI's payment were the entirety of his interactions with CMI. *Id.* ¶ 20.

As to Mr. Power, there is no evidence that he communicated with anyone at CMI, nor is there evidence that he knew what Mr. McCloud knew about CMI and its reasons for requesting the appraisal. Other than his signature on the appraisal, there is no evidence as to Mr. Power's involvement in the events leading to this suit.

There is no evidence that the appraisers knew what CMI did with their appraisal. CMI prepared a securities offering in which investors could participate in making a $3.1 million loan to a borrower who was refinancing a loan on the Denver property. The appraisal report was among the exhibits to the offering memorandum. CMI apparently found enough investors to participate in its offering and made the loan. The borrower defaulted on the loan. The Denver property ultimately sold for $1.4 million, with the investors recovering even less after satisfying tax liens.

Thirty-seven of the investors, including CMI itself, have joined in a suit against the appraisers. They contend that the appraisers are liable for professional negligence, violations of the Washington Consumer Protection Act and Washington State Securities Act, and constructive fraud. CMI brings no claim in its capacity as the party responsible for the securities offering. It sues solely as its capacity as an investor in that offering.

Both appraisers have moved to dismiss the case,[1] contending that the court lacks personal jurisdiction over them. The court now considers their motion.

---

[1] Plaintiffs sued the appraisers' spouses as well, but they do not contend the spouses have any involvement in this suit. The court will refer to the appraisers as the sole Defendants.

ORDER – 3

### III.  ANALYSIS

**A.     Personal Jurisdiction: Evidentiary Burden and Legal Standards**

When a defendant invokes Federal Rule of Civil Procedure 12(b)(2) in a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003).  A plaintiff builds a prima facie case by providing evidence that, if believed, would support the court's exercise of jurisdiction. *Id.* at 1129. The court need not accept a plaintiff's bare allegations if the defendant controverts them with evidence. *See AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).  If both parties provide evidence supporting different versions of a fact, however, the court must resolve competing inferences in a plaintiff's favor. *Harris Rutsky*, 328 F.3d at 1129.  If appropriate, the court must grant a party's request for an evidentiary hearing to determine personal jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284-85 (9th Cir. 1977).  No one has requested an evidentiary hearing in this case.

In a case like this one, where no federal statute governs personal jurisdiction, the court begins its personal jurisdiction analysis with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).  Washington's long-arm statute (RCW § 4.28.185) extends the court's personal jurisdiction to the broadest reach that the Due Process Clause of the United States Constitution permits. *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989).

There are two species of personal jurisdiction: specific and general. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 & n.9 (1984).  Both species depend on the defendant's contacts with the forum.  "[S]pecific jurisdiction is tethered to a relationship between the forum and the claim," whereas general jurisdiction

ORDER – 4

is not. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007). A defendant with "substantial" or "continuous and systematic" contacts with the forum state is subject to general jurisdiction, and can be haled into court on any action, even one unrelated to its contacts in the state. *Bancroft & Masters*, 223 F.3d at 1086. A defendant not subject to general jurisdiction may be subject to specific jurisdiction if the suit against it arises from its contacts within the forum state. *Id.*

No one contends that the appraisers are subject to general jurisdiction in Washington; the court thus considers whether they are subject to specific jurisdiction.

A three-part test determines whether the assertion of specific jurisdiction over a defendant comports with the Due Process Clause:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or [a] resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> 2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden on the first two parts of the test. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If the plaintiff meets its burden, the burden shifts to the defendant to make a "compelling case" that the exercise of jurisdiction is unreasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

**B.  The Evidence Before the Court Does Not Demonstrate Either Purposeful Availment or Purposeful Direction.**

As to the first part of the three-part test, the court must first decide whether the appraisers purposefully availed themselves of the privilege of conducting business in

ORDER – 5

Washington, or whether they purposefully directed activity at Washington. These are "two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. In the Ninth Circuit, tort cases typically require a purposeful direction analysis, whereas contract cases typically require a purposeful availment analysis. *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 672-73 (9th Cir. 2012). Plaintiffs, contending that their claims are either explicitly torts or are tort-like, urge the court to conduct a purposeful direction analysis. Defendants advocate for a purposeful availment analysis, pointing the court to *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990).

In *Sher*, the court considered a malpractice suit that a California resident filed in California against Floridian attorneys who represented him in a criminal trial in Florida. 911 F.2d at 1360. Although the court acknowledged that "some of [plaintiff]'s claims sound[ed] in tort," it found more significant that all of the plaintiff's claims "ar[o]se out of [plaintiff]'s contractual relationship with the defendants." *Id.* at 1362. It applied a purposeful availment analysis, and concluded that the "normal incidents" of contracting with a Californian, including one defendant's visits to California, phone calls and letters between California and Florida, and receipt of payment from a California bank were insufficient. *Id.* The court concluded that the attorneys had not purposefully availed themselves of the privilege of conducting business in California. *Id.* at 1363 ("We find these contacts to attenuated to create a 'substantial connection' with California."). Because the attorneys' firm had taken a deed of trust in the plaintiff's California home, however, the court found that the firm's contacts (which consisted of the contacts of its attorneys plus the deed of trust) were sufficient to constitute purposeful availment. *Id.* at 1363-64.

### 1. Purposeful Availment

In many ways, this case is analogous to *Sher*. Although Plaintiffs' claims sound in tort, they arise out of a contractual relationship between CMI and the appraisers. The

ORDER – 6

appraisers' contacts with CMI, a few telephone and postal conversations between California and Washington, were nothing more than the normal incidents of an interstate business relationship. Nothing about that relationship, save for CMI's physical address, required or contemplated the appraiser's presence in Washington. The chief distinction between this case and *Sher* is that whereas the parties in *Sher* contracted for legal representation in Florida, it is not as easy to determine the states where the parties in this case intended the appraisal to be used. The appraisal itself was an activity confined within the borders of Colorado. But the appraisers (or at least Mr. McCloud) knew that CMI intended to use their appraisal, in Washington, for the purposes of preparing a securities offering. On the record before the court, the appraisers had no idea how that offering would be structured, in what state or states it would be marketed, and from what state or states the ultimate investors would hail. There is no evidence that the appraisers knew that CMI would itself be an investor. Plaintiffs blithely assert that the appraisers should have assumed that the security offering would target Washingtonians, asking if the appraisers could seriously assert that they "thought this Seattle company raised money in New Mexico." The court does not share Plaintiffs' flippant assessment. There is no evidence that the appraisers had any idea that the offering would target Washingtonians. On this record, the assumption that Washingtonian investors would rely on the appraisal is no better than the assumption that investors in New Mexico would do so.

      Further weakening Plaintiffs' case is that there is no evidence that CMI told the appraisers that their appraisal was actually being incorporated into a securities offering. CMI advised the appraisers (or at least Mr. McCloud) that its intent was to do so, but never followed through on its agreement to permit the appraisers to review any document that relied on their appraisal. If CMI had done so, the appraisers might have learned, for example, that the offering was registered in Washington. They might have learned that

ORDER – 7

its prospective investors were largely Washingtonians. If the appraisers had blessed the use of their report nonetheless, Plaintiffs might have some basis to assert that the appraisers purposefully availed themselves of the privileges of doing business in Washington. On this record, however, the only reasonable inference is that the appraisers were aware that a Washington company *might* use their appraisal for a securities offering targeting unknown people in unknown states, and that the company never informed them if it actually did so. The court cannot conclude that the appraisers purposefully availed themselves of a Washington forum.

### 2.  Purposeful Direction

For the same reasons, Plaintiffs fare no better under a purposeful direction analysis. Courts conducting that analysis apply an "effects test" derived from *Calder v. Jones*, 465 U.S. 783 (1984):

> The defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 803). The appraisers' only intentional act aimed at Washington was their delivery of a report to a Washington company. If CMI were suing the appraisers in its capacity as the party making the securities offering, that intentional act would be relevant, because it is at least possible that the appraisers knew that harm arising from defects in the appraisal would be suffered in Washington. The appraisers might have reasonably foreseen being sued by the company requesting the appraisal. But here, CMI sues (along with other investors) solely in its capacity as an allegedly deceived investor in the offering. Again, there is no evidence that the appraisers knew that CMI intended to invest or that any investor would be a Washington resident. The appraisers, on this record, could not have reasonably foreseen suits from Washington investors.

ORDER – 8

Indeed, because there is no evidence that CMI told the appraisers of its plan to proceed with the offering, the appraisers could not have foreseen suits from any investors.

On this record, Plaintiffs cannot establish that the appraisers purposefully availed themselves of the privileges of doing business in Washington or purposefully directed an act at Washington. Their failure to do so means that the court need not consider the remaining two parts of the personal jurisdiction test. For completeness, however, the court observes that on this record, Plaintiffs' suit arises not so much out of the appraisers' intentional act of preparing the appraisal and sending it to Washington, but out of CMI's unilateral decision to use the report in the securities offering. Nonetheless, because the Ninth Circuit uses a "but for" standard in assessing whether a suit arises out of a defendant's contacts with a forum (*Harris Rutsky*, 328 F.3d at 1131-32), the court concludes that this suit arises out of the appraisers' (or at least Mr. McCloud's) contacts with Washington. Finally, the court observes that it would not be unreasonable to subject the appraisers to suit in Washington. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993) (listing seven factors relevant to inquiry into reasonableness of suit in distant forum).

**B.      The Court Will Permit Discovery to Assess Personal Jurisdiction.**

The court's frequent use of the phrase "on this record" in its foregoing analysis highlights that the record consists solely of the appraisers' declarations (which include their correspondence with CMI) and CMI's securities offering circular. Plaintiffs request discovery to supplement that record. The court has discretion to permit discovery to allow a party to uncover evidence relevant to the court's exercise of personal jurisdiction. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). It need not permit discovery where a plaintiff's assertion of personal jurisdiction appears attenuated and is based on bare allegations that contradict a defendant's evidence. *Id.* at 1160.

ORDER – 9

In the typical case, the court would expect CMI to have provided evidence to counter the evidence from the appraisers. Mr. Hunter might, for example, controvert Mr. McCloud's version of CMI's communication with the appraisers in 2006. He might offer evidence that CMI gave the appraisers more specific information about the securities offering. But CMI is in receivership. The receiver granted permission for Plaintiffs' counsel to represent CMI as a Plaintiff. Plaintiffs have not communicated either with Mr. Hunter or with Charles Chesterfield, CMI's namesake. Mr. Chesterfield is apparently in prison.

Plaintiffs' complaints of lack of information contrast poorly with the lack of evidence that Plaintiffs have attempted to obtain information. They do not provide evidence that they have attempted to contact Mr. Hunter, and a bare statement in their motion that Mr. Hunter has not returned Plaintiffs' counsel's calls is not evidence. They do not assert that they have attempted to contact Mr. Chesterfield. They do not assert that they have worked with CMI's receiver to examine CMI's business records for relevant information. They complain that they have not deposed Mr. McCloud or Mr. Thomas, but there is no evidence that they have even attempted to notice a deposition. The motion before the court has been ripe since September 2013. Plaintiffs offer no evidence at all that they have attempted, since then, to find information relevant to their assertion of jurisdiction.

Although the court is not convinced that additional discovery is likely to lead to evidence that would change the court's jurisdictional conclusions, one consideration leads the court to permit limited discovery. The parties are in agreement that even if this court lacks personal jurisdiction, this suit will continue. Plaintiffs requested that rather than dismissing the action, the court transfer it to Colorado's federal district court. Defendants acceded to that request. The discovery that Plaintiffs request (depositions of Mr. Power, Mr. McCloud, Mr. Hunter, and Mr. Chesterfield), will presumably occur

ORDER – 10

regardless of this court's decision on personal jurisdiction. The court accordingly orders as follows:

1) No later than March 7, 2014, Plaintiffs shall file a document that declares either that they will forego discovery to supplement the record as to personal jurisdiction and accept a transfer of this case to Colorado, or that they will pursue limited jurisdictional discovery.

2) If Plaintiffs elect to pursue jurisdictional discovery, Plaintiffs may conduct depositions of Mr. McCloud, Mr. Power, Mr. Hunter, and Mr. Chesterfield. Mr. McCloud and Mr. Hunter's depositions will occur in the location of their choice, although Plaintiffs will bear the cost of providing an office or other facility for the depositions. Mr. Hunter and Mr. Chesterfield are not parties, and this order does not relieve Plaintiffs of their obligation to properly subpoena them.

3) Plaintiffs must either complete this discovery by April 14, 2014, or they must establish that they have been diligent in seeking discovery and need a reasonable extension of this deadline.

4) No later than April 23, 2014, Plaintiffs shall either file a supplemental brief limited solely to addressing new evidence supporting the assertion of personal jurisdiction against Defendants, or Plaintiffs shall file a statement accepting a transfer of this case to Colorado.

5) If Plaintiffs file a supplemental brief, Defendants may reply to it no later than May 2, 2014.

## IV. CONCLUSION

For the reasons previously stated, the court directs the clerk to TERMINATE Defendants' motion to dismiss. Dkt. # 10. On this record, the court lacks personal

ORDER – 11

1 jurisdiction over Defendants.  Plaintiffs may conduct limited discovery, in accordance
2 with this order, to supplement the record as to personal jurisdiction.
3       DATED this 24th day of February, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 12